Charles R. JACKSON and Alice L. Jackson, Plaintiffs-Appellants,

v.

HARSCO CORPORATION, and Patent Scaffolding Company, Defendants-Appellees.

No. 78–789.

Colorado Court of Appeals, Div. III.

April 8, 1982.

Rehearing Denied April 29, 1982.

Certiorari Granted Nov. 1, 1982.

Law Offices of Peter Alan Shelley, Peter Alan Shelley, Boulder, for plaintiffs-appellants.

Madden & Strate, P.C., William J. Madden, Denver, for defendants-appellees.

BERMAN, Judge.

Plaintiffs, Charles R. and Alice L. Jackson, appeal from a jury verdict entered against them and in favor of defendants, Harsco Corporation and Patent Scaffolding Company, in a products liability action. We affirm.

The evidence revealed that on August 6, 1976, plaintiff, Charles Jackson, was working on a scaffolding about four or five feet above the floor. The scaffolding was placed a short distance from a railing. Beyond the railing there was a straight drop of about 60 to 70 feet. While working on the scaffold, the plaintiff fell four feet to the floor and was injured after the scaffolding fell over.

Plaintiffs brought this action under *Restatement (Second) of Torts* § 402A alleging that the scaffolding leg had collapsed because of a defective design. The design defect specified was that the manufacturer, Patent Scaffolding Company, had not placed a dust cap on the leg of the scaffold to prevent corrosive materials from entering the leg, thereby resulting in premature corrosion and weakening of the scaffolding leg.

Defendants did not dispute that the leg was corroded, but alleged that corrosion did not cause the injured plaintiff's fall. In support of their allegation, defendants asserted that the injured plaintiff had tipped the scaffold over first before the leg broke and that thus he, rather than the corroded leg, caused the fall. Defendants further contended that, whatever its cause, if the injured plaintiff had properly used outriggers, a safety device, the accident would not have happened.

### I.

Plaintiffs first contend that the trial court erred in not excluding the evidence offered by the defendants in support of their defenses of assumption of risk and misuse because such defenses in this case amount to nothing more than contributory negligence. We disagree.

In light of the jury's verdict for the defendants, three possibilities are presented. The first is that the jury found that the scaffolding tipped first causing the leg to break and that therefore the leg did not cause the accident and the scaffolding was not defective. Secondly, the jury could have concluded that even though the leg may have broken first, the product nonetheless was not defective because of the length of time it had been used without incident. The jury could have also found that the leg broke first causing the scaffolding to fall, but that the injured plaintiff's failure to use outriggers to prevent the accident constituted either assumption of risk or misuse, thus barring the claim.

■ As to the first possible jury conclusion, the main dispute at trial centered on whether the scaffolding tipped over first or whether the leg broke first. As there was conflicting evidence on this issue, the cause of the accident was for the jury to determine and we will not disturb its finding on review. *See Vigil v. Pine,* 176 Colo. 384, 490 P.2d 934 (1971). The same result pertains as to the second possible jury conclusion, since the question of whether the product was defective was a jury question which we will not disturb as there was evidence to support either conclusion. *See Vigil v. Pine, supra.*

As to the third possible jury conclusion, plaintiffs contend that the trial court committed reversible error in allowing the jury to hear evidence of the injured plaintiff's failure to use outriggers when such conduct amounted to nothing more than negligence. Defendants contend, however, that the injured plaintiff's failure to use outriggers constituted misuse or assumption of risk, and that the jury was entitled to hear evidence on those issues.

At an *in limine* hearing the court held that it would defer any ruling on whether evidence in support of defendants' defense of assumption of risk and misuse could be relied on at trial until evidence was presented at trial in support of those defenses. Since the proper use of outriggers would have prevented the scaffolding from falling over, whatever the cause of the accident, the only remaining issue is whether the jury should have been permitted to hear evidence on the injured plaintiff's failure to use outriggers.

At trial, in support of their defense of assumption of risk, the defendants presented evidence that the injured plaintiff knew the scaffolding could tip over if outriggers were not attached and yet used the scaffolding the day of the accident without the outriggers being properly attached. In support of the defense of misuse, defendants introduced evidence that the scaffolding was not intended to be used without outriggers when the possible fall was 60 to 70 feet and that the manufacturer could not have anticipated that the scaffolding would not be used without outriggers at that height. The jury was instructed that if it found that defendants had established the affirmative defense of misuse or assumption of risk, its verdict must be for the defendants.

■ In a products liability case brought under § 402A, contributory negligence is not available as a defense. *Kysor Industrial Corp. v. Frazier,* Colo., 642 P.2d 908 (1982); *Union Supply v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). *See Hensley v. Sherman Car Wash Equipment Co.,* 33 Colo.App. 279, 520 P.2d 146 (1974). However, "[a]ssumption of the risk as stated in § 402A is a defense to strict liability. (citation omitted) In this [context] it is defined as: 'voluntarily and unreasonably proceeding to encounter a known danger.'" Comment n, *Restatement (Second) of Torts* § 402A. *Union Supply v. Pust, supra. See also Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217 (1977). Misuse is also available as a defense in a strict liability action. *See Kinard v. Coats Co.,* 37 Colo. App. 555, 553 P.2d 835 (1976).

■ To establish the defense of assumption of risk a defendant must show that a plaintiff voluntarily and unreasonably encountered a known danger. *See Kinard v. Coats Co.,* 37 Colo.App. 555, 553 P.2d 835 (1976). To establish the defense of misuse, a defendant must show that a plaintiff used the product in a manner not reasonably foreseeable by the manufacturer, such that the plaintiff became the cause of the accident. *See Kinard v. Coats Co., supra.*

■ Here, the evidence presented by the defendants was sufficient to raise a jury question as to whether the injured plaintiff voluntarily and unreasonably encountered a known danger, that of the scaffolding tipping over, when he failed to attach the outriggers properly. The evidence was also sufficient to go to the jury as to whether the injured plaintiff's failure to use outriggers when a fall of 60 to 70 feet was possible, was a misuse not reasonably anticipated by the manufacturer. *See Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305 (1978)

(whether defendant should have foreseen plaintiff's misuse is question of fact for jury). The trial court properly instructed the jury separately on the defense of assumption of risk and misuse and the jury returned a general verdict in favor of defendants.

■ As the evidence was sufficient to raise a jury question on both defenses, the court's denial of plaintiffs' motion *in limine* to bar evidence of these defenses did not prejudice the plaintiffs and thus will not be reversed on appeal. *See Bruckman v. Pena,* 29 Colo.App. 357, 487 P.2d 566 (1971).

## II.

■ Plaintiffs next contend that the trial court erred in terminating plaintiffs' cross-examination of an expert witness for the defense. We disagree.

During trial, plaintiffs agreed that defendants could call the expert witness out of order before the conclusion of plaintiffs' case because the expert witness would be out of town following that day. Plaintiffs, however, continued to present witnesses throughout the morning and afternoon. At one point defense counsel agreed to defer cross-examination of one of plaintiffs' witnesses until after the expert witness had testified so that there would be adequate time for examination by both parties. Plaintiffs' counsel refused, stating that he had already promised his witness that this would be his last day of testimony.

The court told both parties that it would adjourn promptly at 5:00 p.m. The expert witness was not called, however, until 4:22 in the afternoon because plaintiffs' witnesses had not concluded their testimony until that time. The parties were given an equal opportunity to examine the witness. Defense counsel used twenty-two minutes on the direct examination of the witness and plaintiffs' counsel had twenty-three minutes to cross-examine the witness before the court terminated questioning. Plaintiffs' counsel later made an offer of proof as to the areas on which he would have attempted to impeach the expert witness.

The scope and limitation of cross-examination rests within the discretion of the trial court, and, in the absence of an abuse of discretion, its rulings thereon will not be disturbed. *Barnes v. Safeway Stores, Inc.,* 30 Colo.App. 281, 493 P.2d 687 (1971). Both parties had to curtail their examination of the expert witness. In addition, as noted by the trial court, plaintiffs had available the expert witness' lengthy deposition, and counsel was aware of what the testimony would be and could have utilized the time more efficiently. Even if there were error, it was contributed to by the plaintiffs, and they are in no position to complain now. Under these circumstances, we decline to reverse. C.R.C.P. 61, C.A.R. 35(e).

## III.

■ Plaintiffs next contend that the trial court committed reversible error in failing to order the defendants to answer plaintiffs' interrogatories seeking the facts and documents supporting their defense of misuse. We disagree.

At a hearing on January 27, 1979, plaintiffs filed a motion to compel further responses to their interrogatories. The first interrogatory asked defendants to identify any safety standard code or regulation relating to the design, manufacture, and assembly of ladder aluminum scaffolds on which they intended to rely at trial. Defendants' response to the interrogatory was that it was unknown. The court ordered the defendants to answer the interrogatory further, and in response, defendants listed a number of safety standards formulated by the American National Standard Institute (ANSI). In their pretrial statement defendants stated their exhibits would include applicable ANSI standards, although the specific standards were not identified.

At trial, defendants introduced evidence of additional safety standards which they had not listed in their answer to interrogatories. Plaintiffs contend that defendants should have been barred from introducing safety standards into evidence other than those listed in their answers to interrogatories.

Although defendants should have answered the interrogatories more completely, their answer and pretrial specifications of applicable standards was not such a complete refusal to answer as would justify reversal of the judgment. *See Dolan v. Mitchell,* 179 Colo. 359, 502 P.2d 72 (1972). Defendants' answers gave plaintiffs sufficient notice of the defenses which defendants would rely on so that the court did not commit reversible error in allowing testimony as to the aforementioned ANSI standards.

Plaintiffs' contentions of error with respect to the other interrogatories have no merit as the defendants' answers furnished sufficient information for the plaintiffs to be apprised of their defenses.

### IV.

Plaintiffs last contend that the court order on the bill of costs should be vacated because the defendants filed a bill of costs forty-five days after the date of judgment contrary to Denver District Court Rule 8(e) which required the bill of costs to be filed within ten days of the date of judgment. We disagree.

Although Rule 8(e) specifies that a bill of costs shall be filed within ten days of the date of judgment, it does not provide any sanctions for a party's failure to comply. Therefore, it is discretionary with the trial court whether or not to impose any sanction. In this instance, the trial court declined to impose any sanction for the late filing, an action which is within its power to take. Accordingly, we will not disturb its decision on review.

Judgment affirmed.

KELLY and KIRSHBAUM, JJ., concur.