520 P.2d 146 (1974)
Suzanne HENSLEY, Plaintiff-Appellant,
v.
SHERMAN CAR WASH EQUIPMENT COMPANY, a New Jersey corporation, whose principal place of business is Palmyra, New Jersey, Defendant-Appellee.
No. 73-098.
Colorado Court of Appeals, Div. II.
January 22, 1974.
Rehearing Denied February 13, 1974.
Certiorari Granted April 8, 1974.
*147 Friedman, Bader & Dufty, Robert A. Dufty, Denver, for plaintiff-appellant.
Wood, Ris & Hames, P. C., Stephen E. Connor, Charles E. Weaver, Denver, for defendant-appellee.
Selected for Official Publication.
PIERCE, Judge.
This is an appeal from a judgment entered on a jury verdict in favor of defendant (Sherman). Plaintiff's complaint alleged that Sherman breached an express warranty regarding certain equipment used in a car wash facility where plaintiff was employed as a "drier." Sherman's answer admitted that it sold the equipment, but denied the existence of the express warranty, its breach, and further asserted that plaintiff was barred from recovery due to her contributory negligence or assumption of risk.
The equipment in question was a "hookless conveyor" which served to pull automobiles through the car wash. At the end of the conveyor unit, the rollers which aided in pulling the cars through the production line would drop below ground level and return to the beginning of the conveyor unit. Due to the size of the rollers, an opening in the floor at the end of the conveyor unit was necessary to permit the rollers to drop down to the lower level to begin the return trip. This opening was covered by a "pivoted safety hood" which swung down to permit the car tires to pass over the opening and then swung back to cover the opening after the tire had passed over. The hood was designed so that it could not be moved to expose the opening by a person standing on top of it, but could only be actuated by a horizontal force from the direction of the conveyor, such as that exerted by the wheel of a car being pulled through the process.
To establish the express warranty under C.R.S. 1963, XXX-X-XXX, plaintiff relies on the following language contained in an information sheet provided by defendant:
"3. SAFE WORKING CONDITIONS.
Car wash personnel are assured safe working conditions on all areas of the vehicle by the pivoted safety hood at exit end, over drive box which swings down as tire rides over, and then swings back up to cover the opening after tire has passed over; eliminates all possibility of persons stepping into an open pit."
It is plaintiff's contention that on the day of the accident, she was working at the exit end of the conveyor unit and as she started to cross over in front of a car coming through the wash, she stepped into the opening at the end of the conveyor unit and was injured. She further testified that as she was crossing in front of the car, she was looking back down the line over her right shoulder in order to check on a car that was coming through a blower unit, a duty she had in addition to drying the cars. It is undisputed that the safety hood was in the down position at the time she stepped into the pit.
Defendant contends that plaintiff's inattentiveness amounted to contributory negligence *148 and barred recovery, and that plaintiff "assumed the risk" as she was aware that the safety hood had not been operating properly since the installation of the equipment approximately one month earlier. However, plaintiff testified that on the morning of the accident, a representative of Sherman had worked on the equipment and, specifically, had adjusted the safety hood, assuring her and the manager of the car wash that the device was working properly. Furthermore, she testified that she had observed the hood throughout the morning; that it operated properly each time a car came through the process; and that, therefore, she assumed that it had been properly repaired.
Over objection of plaintiff, the jury was instructed on contributory negligence and assumption of risk. Instructions based on Colorado Jury Instructions 9:15, 9:21 and 14:17 were given. These instructions should not have been given in this case. We reverse the judgment.

I CONTRIBUTORY NEGLIGENCE
Other jurisdictions have held that the concept of contributory negligence, as it is known in negligence case law and as distinct from the doctrine of assumption of risk, has no place in actions premised on breach of warranty. In the absence of established Colorado law, we adopt that view. See, e. g., Brown v. Chapman, 9th Cir., 304 F.2d 149; Bahlman v. Hudson Motor Car Co., 290 Mich. 683, 288 N.W. 309; Vassallo v. Sabatte Land Co., 212 Cal.App.2d 11, 27 Cal.Rptr. 814. See also L. Frumer & M. Friedman, Products Liability § 16.01[3]; Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791. Therefore, instructions based on Colorado Jury Instructions 9:15 and 14:17 should not have been given.
This case presents a clear example of the distinctions between warranty and negligence theories. While the conduct of plaintiff in looking backwards as she stepped into the opening at the end of the conveyor might well constitute negligence on her part, this conduct was within the scope of the risk warranted against by defendant. It is uncontested that the purpose of the safety hood was to prevent a person from stepping into the opening at the end of the conveyor unit. As the language relied on by the plaintiff makes clear, the safety hood was designed to assure safe working conditions for employees and to "eliminate all possibility" of persons stepping into the opening. The very risk which defendant warranted not to exist was encountered by plaintiff, and her negligence or lack of due care is irrelevant. Contributory negligence is not a defense where plaintiff's conduct only puts the warranty to the test. Brown v. Chapman, supra; Bahlman v. Hudson Motor Car Co., supra; Hansen v. Firestone Tire & Rubber Co., 6th Cir., 276 F.2d 254.

II ASSUMPTION OF RISK
In discussing affirmative defenses in strict liability cases (whether it be in warranty or in tort) terms such as "contributory fault" have been adopted by several authorities. See, e. g., Williams v. Ford Motor Co., 454 S.W.2d 611 (Mo.App.); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), supra. Such labels indicate a goal of removing negligence as a consideration (which has created much confusion, from the law of warranty and strict liability in tort, while recognizing that there are some affirmative defenses in these cases. We agree with the end result.
The most common accepted affirmative defense to a warranty claim is unreasonable use of the product by the plaintiff with knowledge of the defective condition and the risk it creates. See, e. g., Barefield v. LaSalle Coca-Cola Bottling Co., 370 Mich. 1, 120 N.W.2d 786; Erdman v. Johnson Bros. Radio & Television Co., 260 Md. 190, 271 A.2d 744; Douglas v. W. C. Mallison & Son, 265 N.C. 362, 144 S.E.2d 138. See also C.R.S. 1963, XXX-X-XXX, Comment 5; Prosser, The Fall of the Citadel (Strict Liability to the Consumer), supra. This defense bears a resemblance to *149 the negligence doctrine of assumption of risk. However, the instruction given in this case (Colorado Jury Instructions 9:21), is drafted in the language of negligence, and again, as with the instructions on contributory negligence, improperly suggested to the jury that the "negligence" of the parties was relevant to the case. Instead, the defendant was entitled only to an instruction to the effect that plaintiff could not recover if she unreasonably exposed herself to a known defective condition. Such activity on her part would be disregard of a known danger, and she would not be proceeding in reliance upon defendant's warranty. Barefield v. La-Salle, supra. See Douglas v. W. C. Mallison & Son, supra.
It is uncontested that plaintiff was aware of the fact that the safety hood had not been operating properly at all times. However, if her testimony is to be believed, the fact of her knowledge is attenuated by her apparent reliance on the assurances from the defendant's representative that the safety hood had been repaired and her own observation of the hood just prior to the accident. The issue is her awareness of a defect in the mechanism at the time of the accident. Whether or not her reliance on the statements of the repairman and her own observations was justifiable would be a question for the jury to determine. See Erdman v. Johnson Bros. Radio & Television Co., supra; cf. General Motors Corp. v. Dodson, 47 Tenn. App. 438, 338 S.W.2d 655.
In view of the fact that we are introducing a new concept into the Colorado law which was not available to counsel at trial, we feel compelled to comment on procedures to be followed upon retrial of this matter. It will be proper to submit an instruction consistent with Colorado Jury Instructions 14:6. If defendant elects to amend its answer to include the defense of use with knowledge of the defect, it will then be entitled to adduce evidence to support an appropriate instruction. Such instruction should be to the effect that if plaintiff were aware of the defect in the machinery and if, having such knowledge, a reasonably prudent person would not have continued to use the machinery in the manner in which she did at the time she was injured, then she may not recover. The instruction should also inform the jury that if plaintiff relied on the repairman's assurances that the hood was operating properly and if that reliance, in view of her own observation, was reasonably justifiable, then it must conclude that plaintiff did not have the requisite knowledge at the time of the injury to establish the defendant's affirmative defense.
The foregoing being dispositive of this case, we need not discuss the other allegations of error raised by plaintiff.
Judgment reversed and the cause remanded for a new trial.
COYTE and ENOCH, JJ., concur.